UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER DURAN HEAD,

        Petitioner,

v.                            Case No. 19-10768
                            Honorable Denise Page Hood

T. Winn,

        Respondent.

_____/

## OPINION AND ORDER DENYING THE HABEAS PETITION, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Petitioner Christopher Duran Head filed a *pro se* habeas corpus petition under 28 U.S.C. § 2254. The habeas petition challenges Petitioner's convictions for manslaughter, child abuse, and three firearm offenses. He raises four claims regarding: the sufficiency of the evidence for the manslaughter and child-abuse convictions; the trial court's jury instruction on manslaughter and trial counsel's failure to object to the instruction; the admission of gory photographs of the deceased victim; and the prosecution's alleged failure to provide Petitioner with notice of his status as a fourth habitual offender and as a violent habitual offender.

Warden T. Winn argues in an answer to the petition that: there was sufficient evidence to support Petitioner's manslaughter and child-abuse convictions; Petitioner's claim about the jury-instructions is waived, procedurally

defaulted, not cognizable on habeas review, and meritless; the claim about gory photographs is not cognizable on habeas review, and the photographs did not deprive Petitioner of a fundamentally fair trial; and the claim about the timing of the habitual offender notices is not cognizable on habeas review and also meritless. The Court agrees that Petitioner's claims do not warrant habeas corpus relief.   The Court, therefore, denies the petition.   The Court also declines to issues a certificate of appealability, but grants leave to appeal *in forma pauperi*s.

## I.   BACKGROUND

### A.   The Charges and Trial

The Wayne County Prosecutor charged Petitioner with second-degree murder, Mich. Comp. Laws § 750.317, involuntary manslaughter, Mich. Comp. Laws § 750.321, second-degree child-abuse, Mich. Comp. Laws § 750.136b(3), felon in possession of a firearm, Mich. Comp. Laws § 750.224f, possession of a short-barreled shotgun, Mich. Comp. Laws § 750.224b, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b.   The charges arose from the fatal shooting of Petitioner's nine-year-old son, DH, at Petitioner's home.   The shooter was Petitioner's daughter, TH, who was ten years old at the time.[1]

---

[1] The Court is referring to the minor children by their initials.    This is consistent with how the Michigan Court of Appeals and respondent T. Winn referred to the children.

Petitioner was tried before a jury in Wayne County Circuit Court where the testimony established that, on the day in question, DH was playing a violent video game in Petitioner's upstairs bedroom.  TH came in the room and asked DH whether he wanted to act out the video.   When DH agreed, TH went to an unlocked closet, picked up Petitioner's shotgun, and started waving it.  The gun jerked down, and when TH attempted to raise the gun, it fired.  The gunshot hit DH in the head and killed him.  Petitioner and a young person who considered Petitioner to be her uncle were downstairs at the time of the shooting.

The prosecutor's theory on the murder charge was that Petitioner knowingly created a high risk of death or great bodily harm by storing a loaded sawed-off shotgun in a place accessible to his children.  *See* 7/5/16 Trial Tr. at p. 90 (ECF No. 8-13, PageID.472); 7/6/16 Trial Tr. at pp. 100-01 (ECF No. 8-15, PageID. 694-95). The prosecutor's theory on the manslaughter charge was that Petitioner was grossly negligent because he knew of the danger to others, he could have avoided the injury by using ordinary care, and he failed to use ordinary care when it must have been apparent to a reasonable person that the result was likely to be serious injury.   See 7/5/16 Trial Tr. at pp. 4-5, 90-91 (ECF No. 8-13, PageID.386-87, 472-73); 7/6/16 Trial Tr. at pp. 101-03 (ECF No. 8-15, PageID.695-97). The child-abuse charge was based on the theory that Petitioner committed a reckless act by storing his shotgun in a way that was unsafe for his

children and by causing injury.    7/5/16 Trial Tr. at p. 91 (ECF No. 8-13, PageID.473); 7/6/16 Trial Tr. at p. 103 (ECF No. 8-15, PageID.697).

Petitioner chose not to testify in his own defense. The only defense witness was his brother, who testified that Petitioner loved his children, that he took them on family outings, and that he told his children more than once not to "mess with" the gun that was there. 7/6/16 Trial Tr. at pp. 67-71 (ECF No. 8-15, PageID.661-65).

Petitioner's defense was that he was a loving father, not a murderer, that he was not grossly negligent, and that the shooting was a tragic accident.  He also maintained that he possessed the gun to protect his family because he lived in a dangerous neighborhood and that he could not have anticipated what his obedient daughter would do.   See 7/5/16 Trial Tr. at pp. 94-96 (ECF No. 8-13, PageID.476-78); 7/6/16 Trial Tr. at pp. 104-118 (ECF No. 8-15, PageID.698-712). On July 7, 2016, the jury acquitted Petitioner of the murder charge, but found him guilty of involuntary manslaughter, second-degree child abuse, and the three firearm charges.   *See* 7/7/16 Trial Tr. at p. 4 (ECF No. 8-16, PageID.724).

## B.   The Sentence, Motion for Resentencing, and Direct Appeal

On July 25, 2016, the trial court sentenced Petitioner as a fourth habitual offender and as a violent habitual offender to concurrent terms of 25 to 50 years in prison for the manslaughter conviction, 10 to 50 years for the child-abuse

conviction, and 5 to 50 years for the felon-in-possession and short-barreled shotgun convictions. The court sentenced Petitioner to a consecutive term of two years in prison for the felony-firearm conviction. *See* Sentence Hr'g Tr. at p. 18 (ECF No. 8-17, PageID.745).

Petitioner moved for resentencing on grounds that the prosecution did not serve him with notice that he was being charged as a fourth-offense habitual offender and as a violent habitual offender and that the prosecution did not file a proof of service to show that he was personally served. *See* 1/6/17 Mot. Hr'g Tr. at pp. 3-5 (ECF No. 8-18, PageID.750-52). The trial court denied the motion after concluding that Petitioner was not entitled to resentencing for a ministerial error and that Petitioner had actual notice of both the habitual offender charge and the 25-year mandatory minimum. *See id*. at pp. 6-7, PageID.753-54.

Petitioner raised his habeas claims through counsel in an appeal of right. The Michigan Court of Appeals rejected his claims and affirmed his convictions and sentences on March 27, 2018. *See People v. Head*, 323 Mich. App. 526; 917 N.W.2d 752 (2018).

Petitioner then applied for leave to appeal in the Michigan Supreme Court, which denied leave to appeal on December 7, 2018, because it was not persuaded to review the questions presented to the court. *See People v. Head*, 503 Mich. 918; 920 N.W.2d 145 (2018). The high court stated that its denial was without

prejudice to Petitioner's right to file a motion for relief from judgment on his claim that the prosecution had failed to give timely notice that he would be subject to a 25-year mandatory minimum sentence under Mich. Comp. Laws § 769.12(1)(a). *Id*.

## C.    The Habeas Petition, Post-Conviction Motion, and Collateral Appeal

On March 14, 2019, Petitioner filed his habeas corpus petition with his state appellate briefs attached as support for his claims.   (ECF No. 1.)   Several days later, on March 27, 2019, Petitioner filed a motion for relief from judgment in the state trial court. *See People v. Head*, Wayne Cty. Cir. Ct. Register of Actions, No. 15-010037-01-FC (ECF No. 8-1, PageID.206).   On July 29, 2019, the trial court denied Petitioner's motion.[2]

Petitioner filed a delayed application for leave to appeal, but the Michigan Court of Appeals affirmed the trial court's order.   *See People v. Head*, No. 352966, 2021 WL 1712575 (Mich. Ct. App. Apr. 29, 2021).   The Court of Appeals reissued its order on October 28, 2021.   *See People v. Head*, No. 352966, 2021 WL 5021700 (Mich. Ct. App. Oct. 28, 2021).   Petitioner then applied for leave to appeal in the Michigan Supreme Court which was denied on July 28, 2022.[3]

---

[2] *See* https://cmspublic.3rdcc.org/CaseDetail.aspx?CaseID=2507571.

[3]   *See* https://www.courts.michigan.gov/c/courts/coa/case/352966.

## II.   STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires prisoners who challenge "a matter 'adjudicated on the merits in State court' to show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' " *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. § 2254(d)).   Simply stated, "[f]ederal habeas courts must defer to reasonable state-court decisions].]" *Dunn v. Reeves*, 141 S. Ct. 2405, 2407 (2021).   This is a "highly deferential standard," which "demands that state-court decisions be given the benefit of the doubt."   *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy,* 521 U.S. 320, 333 n.7 (1997), and *Woodford v. Visciotti,* 537 U.S. 19, 24 (2002) (*per curiam*)).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).   "Only an 'objectively unreasonable' mistake, . . .   one 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement,' slips through the needle's eye of § 2254." *Saulsberry v.*

*Lee*, 937 F.3d 644, 648 (6th Cir. 2019)(quoting *White v. Woodall*, 572 U.S. 415, 419 (2014), then *Richter*, 562 U.S. at 103). "That's a 'high bar' to relief, which 'is intentionally difficult to meet.' " *Kendrick v. Parris,* 989 F.3d 459, 469 (6th Cir.) (quoting *Woods v. Donald*, 575 U.S. 312, 316 (2015)), *cert. denied*, 142 S. Ct. 483 (2021).

## III.   DISCUSSION

### A.   Sufficiency of the Evidence

Petitioner alleges first that there was insufficient evidence at trial to support his convictions for involuntary manslaughter and second-degree child abuse. He contends that there was insufficient evidence of gross negligence to support his manslaughter conviction. He also contends that he was not the proximate cause of his son's death; instead, he maintains that his daughter's unforeseen conduct was the superseding cause of death.

Petitioner makes a similar challenge to his child-abuse conviction. Although the prosecutor's theory was that Petitioner's reckless act caused serious physical harm to DH, Petitioner asserts that having a loaded shotgun in a closed closet was not likely to cause harm. He maintains that his daughter's unforeseen and disobedient act caused the harm and that there was no evidence that he knew his daughter was aware of the gun. The Michigan Court of Appeals concluded on review of Petitioner's claim that there was sufficient evidence of gross negligence

and causation to support Petitioner's manslaughter conviction and that there was sufficient evidence of a reckless act and causation to support the child-abuse conviction.

### 1. Clearly Established Federal Law

The Supreme Court has held "that the Due Process Clause [of the Fourteenth Amendment] protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). Following *Winship*, the critical inquiry on review of a challenge to the sufficiency of the evidence supporting a criminal conviction "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

"[R]eview of a state-court conviction for sufficiency of the evidence is very limited" because federal habeas courts "give two layers of deference to state-court convictions." *Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018). First, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (*per curiam* opinion quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (*per curiam*)). And second, on habeas review, a federal court may

overturn a state court decision rejecting a sufficiency of the evidence challenge "only if the state court decision was 'objectively unreasonable.' " *Id.* (quoting *Smith*, 565 U.S. at 2) (quoting *Lett*, 559 U.S. at 733); *see also Tanner v. Yukins*, 867 F.3d 661, 672 (6th Cir. 2017) (stating that "two layers of deference apply [to a sufficiency-of-the-evidence claim], one to the jury verdict, and one to the state appellate court").

### 2. Involuntary Manslaughter

The *Jackson* "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16.   In Michigan, " '[i]nvoluntary manslaughter is the unintentional killing of another without malice' in combination with a specified culpable act or mental state, which includes a causation component." *People v. Tims*, 449 Mich. 83, 94; 534 N.W.2d 675, 680 (1995) (emphasis and internal citation omitted).   The prosecutor's theory was that Petitioner's mental state was one of gross negligence and that Petitioner was the proximate cause of the killing.

### a. Gross Negligence

To show "gross negligence," the prosecutor had to establish the following elements:

> (1) Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another.

(2) Ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand.

(3) The omission to use such care and diligence to avert the threatened danger when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another.

*People v. McCoy*, 223 Mich. App. 500, 503; 566 N.W.2d 667, 669 (1997).

There was sufficient evidence of gross negligence at Petitioner's trial.  As explained by the state court:

> [D]efendant kept an illegal, loaded, short-barreled shotgun in an unlocked closet in his bedroom.  He allowed his children to spend time in that bedroom while unsupervised.  In particular, defendant allowed his nine-year-old son, DH, to play a violent video game in that bedroom while unsupervised.  Defendant's 10-year-old daughter, TH, likewise had unsupervised access to defendant's bedroom and entered that bedroom while DH was playing the video game.  TH then suggested that she and DH act out the video game.  She retrieved the loaded shotgun from the closet and accidentally fired the gun, which led to DH's death.

*Head*, 323 Mich. App. at 533; 917 N.W.2d at 758.

This Court agrees with the Michigan Court of Appeals:  "A rational trier of fact could find that [Petitioner] acted with gross negligence in allowing his children to have unsupervised access to a loaded shotgun."  *Id*.  He admitted in a pretrial statement to a detective that the shotgun belonged to him, that he kept it loaded in an unlocked closet, and that he had custody of the children every weekend.  *See* 7/6/16 Trial Tr. at pp. 11-12 (ECF No. 8-15, PageID.605-06).   He also told the detective that his son was upstairs playing a game for about 15 to 20

11

minutes and that his daughter then joined his son for about 15 to 20 minutes.   *Id.* at p. 13, PageID.607. These admissions demonstrate that Petitioner knew of a situation requiring the exercise of ordinary care and diligence to avert injury to another person.

He also had the ability to avoid harm to another person by taking ordinary care and diligence.   He could have removed bullets from the shotgun, kept it in a place where his visiting children could not find and reach it, or monitored their activities more carefully.   Finally, it must have been apparent that the result of his failure to use ordinary care and diligence to avert danger could prove disastrous to his children.

The prosecution established the elements of gross negligence, and the Michigan Court of Appeals reasonably concluded that there was sufficient evidence of gross negligence.

### b.  Causation

The prosecutor also had to prove causation.   "[T]he causation element of an offense is generally comprised of two components: factual cause and proximate cause."   *People v. Schaefer*, 473 Mich. 418, 435; 703 N.W.2d 774, 785 (2005).

> The concept of factual causation is relatively straightforward. In determining whether a defendant's conduct is a factual cause of the result, one must ask, "but for" the defendant's conduct, would the result have occurred?  If the result would not have occurred absent the defendant's conduct, then factual causation exists.

*Id.,* 473 Mich. at 435–36; 703 N.W.2d at 785 (internal and end footnotes omitted).

The prosecutor proved factual causation at Petitioner's trial because, if Petitioner had not kept a loaded shotgun in a place readily accessible to his unsupervised children, his daughter would not have been able to take the gun and shoot her brother.

But proximate cause also must also be established.  *Id.*, 473 Mich. at 436; 703 N.W.2d at 785.  "For a defendant's conduct to be regarded as a proximate cause, the victim's injury must be a 'direct and natural result' of the defendant's actions."  *Id.*

> In making this determination, it is necessary to examine whether there was an intervening cause that superseded the defendant's conduct such that the causal link between the defendant's conduct and the victim's injury was broken.  If an intervening cause did indeed *supersede* the defendant's act as a legally significant causal factor, then the defendant's conduct will not be deemed a proximate cause of the victim's injury.
>
> The standard by which to gauge whether an intervening cause supersedes, and thus severs the causal link, is generally one of reasonable foreseeability . . . .
>
> If [the intervening act] was reasonably foreseeable, then the defendant's conduct will be considered a proximate cause.  If, however, the intervening act by the victim or a third party was not reasonably foreseeable[,] . . . then generally the causal link is severed and the defendant's conduct is not regarded as a proximate cause of the victim's injury or death.

*Id.*, 473 Mich. at 436–38; 703 N.W.2d at 785–86.

Petitioner argues that he was not the proximate cause of DH's death.   He contends that his daughter's act of obtaining the gun and shooting DH was an intervening event that broke the causal link between his (Petitioner's) conduct and DH's injury.   But as the Michigan Court of Appeals pointed out, "[t]he result of [Petitioner's] conduct was not remote or unnatural."   *Head*, 323 Mich. App. at 534; 917 N.W.2d at 758.   One could expect a child to die from playing near a loaded and readily accessible shotgun.

> Nor does TH's action of obtaining the weapon and accidentally firing it constitute an intervening cause that superseded defendant's conduct. Rather, TH's actions were reasonably foreseeable.   Given that young children fail to appreciate the risks posed by loaded firearms in the same way that adults should, it is foreseeable that a child could accidentally fire a loaded weapon that was readily accessible in a room where the child was playing without supervision. Although some testimony suggested that defendant told the children not to touch the weapon or to go into the closet and that TH was ordinarily an obedient child, it is far from uncommon for a 10-year-old child to fail to comply with a parent's instructions. . . .

*Id.*, 323 Mich. App. at 534-35; 917 N.W.2d at 758-59.[4]

A rational juror could have concluded from the evidence taken in the light most favorable to the prosecution that Petitioner was grossly negligent in allowing

---

[4]   Petitioner's niece, Roni Johnson, testified that TH was an obedient child and that TH generally followed instructions.   Johnson also testified that she had heard Petitioner tell the children not to go near his closet or to stay away from the gun in his closet.   *See* 7/5/16 Trial Tr. at pp. 170, 172 (ECF No. 8-13, PageID.552, 54). TH, on the other hand, testified that Petitioner never told her not to go in the closet and that she could not remember whether he told her not to play with the gun.   *See* 7/6/16 Trial Tr. at pp. 39-40 (ECF No. 8-15, PageID.633-634).

his children to play unsupervised near an unlocked closet containing a loaded shotgun.    A rational juror also could have concluded that Petitioner was the factual and proximate cause of DH's death.    The evidence, therefore, was sufficient to sustain Petitioner's conviction for involuntary manslaughter, and the state court's adjudication of Petitioner's claim was not contrary to, or an unreasonable application of, *Jackson.*    Petitioner has no right to relief on his challenge to his manslaughter conviction.

### 3. Second-Degree Child Abuse

Petitioner also contends that there was insufficient evidence to support his conviction for second-degree child abuse.    He alleges that having a loaded shotgun in a closet is not likely to cause harm and, therefore, he was not the cause of his son's death.    He argues that his daughter's unforeseen desire to "act out" the video game that DH was watching caused the death.

Petitioner was charged with child abuse under Mich. Comp. Laws § 750.136b.    A person is guilty of second-degree child abuse if any of the following three circumstances exist:

(a) The person's omission causes serious physical harm or serious mental harm to a child or if the person's reckless act causes serious physical harm or serious mental harm to a child.

(b) The person knowingly or intentionally commits an act likely to cause serious physical or mental harm to a child regardless of whether harm results.

15

(c) The person knowingly or intentionally commits an act that is cruel to a child regardless of whether harm results.

Mich. Comp. Laws § 750.136b(3).

The prosecutor's theory was that Petitioner was guilty under § 750.136b(3)(a) because his reckless act of keeping a loaded firearm in a location accessible to his children caused serious physical harm to his son. The law in Michigan is that,

> [t]o establish second-degree child abuse based on a reckless act, the prosecution must prove (1) that the defendant was a parent or a guardian of the child or had care or custody of or authority over the child, (2) that the defendant committed a reckless act, (3) that, as a result, the child suffered serious physical harm, and (4) that the child was under 18 years old at the time.

*People v. Murphy*, 321 Mich. App. 355, 360; 910 N.W.2d 374, 376–77 (2017).

The only one of these elements in dispute at Petitioner's trial was the second one: whether he committed a reckless act. "[T]o constitute a 'reckless act' under the statute, the defendant must do something and do it recklessly. Simply failing to take an action does not constitute an act." *Id.*, 321 Mich. App. at 361; 910 N.W.2d at 377.

The record demonstrates that Petitioner "committed reckless acts by storing a loaded, short-barreled shotgun in his unlocked bedroom closet and then allowing his children to play in the room while unsupervised." *Head*, 323 Mich.

16

App. at 536; 917 N.W.2d at 759.   These were affirmative acts, not mere inaction.
*See id.*

A rational juror, therefore, could have concluded from the evidence taken in the light most favorable to the prosecution that Petitioner was guilty of second-degree child abuse.   And the state appellate court's adjudication of Petitioner's claim was neither contrary to, nor an unreasonable application of, *Jackson*.   This Court declines to grant relief on Petitioner's challenge to his child-abuse conviction.

## B.   The Jury Instructions

Petitioner alleges next that the trial court did not properly instruct the jury on the critical elements of involuntary manslaughter.   According to Petitioner, the instructions read to the jury directed a verdict of guilt by informing the jury that he caused the victim's death.   Petitioner argues in the alternative that his attorney was ineffective for failing to object to the instructions.

### 1.   Waiver

The Michigan Court of Appeals concluded on review of Petitioner's claim that he waived review of his instructional error because defense counsel affirmatively approved of the trial court's instructions.   The Court of Appeals also determined that Petitioner's claim was "devoid of merit" and that defense counsel

was not ineffective for failing to object because the instruction was not erroneous. *See Head*, 323 Mich. App. at 537-39; 917 N.W.2d at 759-61.

A waiver ordinarily is "an intentional relinquishment or abandonment of a known right or privilege," and a determination of whether there has been an intelligent waiver "must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). Because waiver extinguishes an error, *United States v. Olano*, 507 U.S. 725, 733 (1993), a court "cannot review the supposed error at all." *United States v. Montgomery*, 998 F.3d 693, 697 (6th Cir. 2021) (citing *Olano*, 507 U.S. at 733, and *United States v. Jackson*, 995 F.3d 476, 484 (6th Cir. 2021)).

Petitioner's trial attorney approved of the jury instructions during trial. *See* 7/6/16 Trial Tr. at p. 79 (ECF No. 8-15, PageID.673). In doing so, Petitioner waived the right to appellate review of the jury instructions, and this Court is not required to address Petitioner's claim on the merits. *Montgomery*, 998 F.3d at 697-98.

## 2. Trial Counsel's Failure to Object

Petitioner argues in the alternative that his attorney was ineffective for failing to object to the instructions.

18

### a.   Clearly Established Federal Law

The clearly established federal law for an ineffective-assistance-of-counsel claim is *Strickland v. Washington*, 466 U.S. 668 (1984). *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011).   To establish that trial counsel's assistance was so defective as to require reversal of a conviction, a convicted defendant must show that his or her attorney's performance was deficient and that the deficient performance prejudiced the defense.   *Strickland*, 466 U.S. at 687.   "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable."   *Id*.

"Judicial scrutiny of counsel's performance must be highly deferential."   *Id.* at 689.   Because of the difficulties inherent in evaluating an attorney's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' "   *Id*. (end citation omitted).

A deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."   *Id.* at 687. "[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness."   *Id*. at 688.   There must be "a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' " but "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 111-12 (quoting *Strickland*, 466 U.S. at 693).

When a state court rejects a defendant's ineffectiveness claim, a habeas court owes deference to counsel *and* the state court. *Reeves*, 141 S. Ct. at 2410. In other words,

> [w]hen the claim at issue is one for ineffective assistance of counsel . . . , AEDPA review is "doubly deferential," *Cullen v. Pinholster,* 563 U.S. 170, 190, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), because counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *Burt v. Titlow,* 571 U.S. ——, ——, 134 S.Ct. 10, 17, 187 L.Ed.2d 348 (2013) (quoting *Strickland v. Washington,* 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); internal quotation marks omitted). In such circumstances, federal courts are to afford "both the state court and the defense attorney the benefit of the doubt." *Burt, supra,* at ——, 134 S.Ct., at 13.

*Woods v. Etherton*, 578 U.S. 113, 117 (2016) (*per curiam* opinion).

### b.   Application of the Law

To determine whether trial counsel was ineffective, the Court looks to Petitioner's underlying claim about the jury instruction on involuntary manslaughter. The instruction, as read to Petitioner's jury, reads as follows:

In count 2, the defendant is charged with the crime of involuntary manslaughter. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt.

First, that the defendant caused the death of [DH].   That is, that [DH] died as a result of the defendant knowingly and intentionally, illegally possessing, storing and maintaining a loaded shortbarreled shotgun in an unsecure and readily accessible location in his home; where, to his personal knowledge, unsupervised children in his care, custody and control regularly played.

Or, first that the defendant caused the death of [DH].   That is, that [DH] died as a result of the defendant's fail[ure] to maintain a safe and secure home environment for unsupervised children in h[i]s care, custody and control.   By failing to insure that illegal, loaded firearms were not stored in the manner that was easily and readily accessible to those unsupervised children.

And second, in doing the act that caused [DH]'s death, the defendant acted in a grossly negligent manner. Gross negligence means more than carelessness. It means willfully disregarding the results to other[]s that might follow from an [act] or a failure to act.

In order to find that the defendant was grossly negligent you must fin[d] each of the following three things beyond a reasonable doubt.   First, that the defendant kn[e]w of the danger to another. That is, he knew there was a situation that required him to take ordinary care to avoid injuring another.

Second, that the defendant could have avoided injuring another by using ordinary care.   And third, that the defendant failed to use ordinary care to prevent injuring another when, to a reasonable person, it must have been apparent that the result was likely to be a serious injury.

7/6/16 Trial Tr. at pp. 92-93 (ECF No. 8-15, PageID.686-87) (alterations and

underlining added).

21

Petitioner objects to the underlined sentences quoted above and argues that those sentences automatically attribute causation to him and direct a verdict of guilt.  But he ignores the earlier statement that those were elements that the prosecutor had to prove to establish involuntary manslaughter.   The trial court did not attribute causation to Petitioner; nor did the court direct a verdict of guilt. Thus, the instruction did not violate Petitioner's right to due process, and trial counsel was not ineffective for failing to object to the instruction.   "Omitting meritless arguments is neither professionally unreasonable nor prejudicial," *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013), and the state appellate court's conclusion -- that defense counsel was not ineffective – was objectively reasonable.      Petitioner    is    not    entitled    to    relief    on    his ineffective-assistance-of-counsel claim.

## C.  Gruesome Photographs

The third habeas claim alleges that the trial court abused its discretion and deprived Petitioner of a fair trial by admitting in evidence gory photographs of the deceased victim.  Petitioner contends that the photographs added nothing to the facts of the case and that they were meant to evoke the jury's sympathy or anger.

He also contends that the photographs were unfairly prejudicial and cumulative to the medical examiner's testimony.[5]

The trial court determined that the photographs were relevant and that their prejudicial nature did not substantially outweigh their relevance.   *See* 7/5/16 Trial Tr. at 100-102 (ECF No. 8-13, PageID.482-84).   The Michigan Court of Appeals subsequently concluded that the trial court did not abuse its discretion by admitting the photographs in evidence.   *See Head,* 323 Mich. App. at 539-42; 917 N.W.2d at 761-62.

Federal habeas courts usually do not question state-court rulings on the admission or exclusion of evidence under state law.   *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988).   In fact, a claim about the admission of gruesome photographs of a deceased victim is not cognizable in a habeas corpus proceeding. *Gerlaugh v. Stewart,* 129 F.3d 1027, 1032 (9th Cir. 1997).   Such claims do "not present a question of constitutional magnitude," *Pearl v. Cason,* 219 F. Supp. 2d 820, 830 (E.D. Mich. 2002) (citing *Cooey v. Coyle,* 289 F.3d 882, 893-94 (6th Cir. 2002) (citing *Gerlaugh,* 129 F.3d at 1032)), because "[t]he admission of relevant

---

[5]   The medical examiner performed the autopsy on DH, and he testified that a shotgun which is discharged at close range tends to create a massive or devastating injury, especially if the injury is to the head, and especially when the victim is a nine-year-old child.   The medical examiner then said that in this case, "basically half the head [was] missing."   7/6/16 Trial Tr. at p. 49 (ECF No. 8-15, PageID.643).

photographs of a crime scene or a victim, even if gruesome, does not deprive a criminal defendant of a fair trial." *Skrzycki v. Lafler*, 347 F. Supp. 2d 448, 455 (E.D. Mich. 2004) (citing *Cooey*, 289 F.3d at 893-94, and *Gerlaugh*, 129 F.3d at 1032). This is also true if the photographs were "cumulative and likely designed more to inflame the jury than to supply an essential underpinning of the prosecution's case." *Gonzalez v. DeTella*, 127 F.3d 619, 621 (7th Cir. 1997) (citing *Gomez v. Ahitow*, 29 F.3d 1128, 1139-40 (7th Cir. 1994)).

Even if Petitioner's claim were cognizable on habeas review, "states have wide latitude with regard to evidentiary matters under the Due Process Clause." *Wilson v. Sheldon*, 874 F.3d 470, 476 (6th Cir. 2017). A trial court's evidentiary error does not rise to the level of a federal constitutional claim warranting habeas corpus relief unless the error rendered the proceeding fundamentally unfair. *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004).

The alleged error in this case did not render Petitioner's trial fundamentally unfair because, as the Michigan Court of Appeals pointed out,

> [t]he nature and extent of DH's injuries revealed the powerful nature of the short-barreled shotgun and were thus probative of defendant's gross negligence and recklessness in storing this loaded, deadly weapon in a place that was readily accessible to his unsupervised children. . . . In addition, the jury acquitted defendant of the charge of second-degree murder, the most serious charge, so it does not appear that the jury made its decision on the basis of an unfair emotional response.

*Head*, 323 Mich. App. at 542; 917 N.W.2d at 762.

24

Petitioner's state evidentiary claim is not cognizable on habeas review, and to the extent he raises a due process claim, the claim lacks merit because the alleged error did not deprive him of a fair trial.   The Court declines to grant relief on Petitioner's third claim.

## D.   The Habitual Offender Notice

The fourth and final habeas claim alleges that the prosecution failed to (i) serve the habitual-offender notice on defense counsel and (ii) file a proof of service in state court, as required by a Michigan statute and court rule.   Petitioner also alleges that neither the criminal complaint, nor the charging document known as the criminal information, states that he was subject to a mandatory minimum sentence for 25 years as a habitual violent offender.   Finally, Petitioner claims that the criminal information was not signed.

Petitioner concludes from the alleged errors that his status as a habitual offender is void and that he is entitled to resentencing.   The Michigan Court of Appeals rejected these arguments on direct appeal, and on state collateral review, the Court of Appeals once again considered and rejected Petitioner's claim that he lacked notice of his status as a violent habitual offender.[6]   *People v. Head*, No.

---

[6]   The Court of Appeals explained on collateral review that, while fourth-offense habitual offender status and violent habitual offender status are similar, the two issues are different.   The primary difference relevant to this case is their respective effects on sentencing.   Fourth-offense habitual offender status raises the top end of the sentencing guidelines, but does not carry a mandatory minimum sentence.   MCL 769.12(1)(b) and (c).    Violent habitual offender status, on the other hand, carries a mandatory minimum sentence of 25 years.   MCL 769.12(1)(a).

352966, 2021 WL 1712575, at *2 (Mich. Ct. App. Apr. 29, 2021); and *People v. Head*, No. 352966, 2021 WL 5021700, at *2 (Mich. Ct. App. Oct. 28, 2021).   On collateral review, the Michigan Court of Appeals considered only Petitioner's claim about notice of his violent habitual offender status, and it concluded that Petitioner waived the issue because he did not object to the enhancement in the trial court, nor request additional time to consider his options.  *Head*, 2021 WL 1712575, at *3-*4; *Head*, 2021 WL 5021700, at *3-*4.

This Court finds no merit in Petitioner's arguments because they are based entirely on state law, and "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *accord Lewis v. Jeffers,* 497 U.S. 764, 780 (1990) (stating that "federal habeas corpus relief does not lie for errors of state law"); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law.").   When "conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."    *McGuire,* 502 U.S. at 68.

Even if the Court were to interpret Petitioner's claim as a violation of his rights to notice and due process of law, the claims lack merit, or the errors were harmless for the reasons given by the state court.   First, the charging documents apprised Petitioner of his status as a fourth habitual offender.   *See Head*, 323

Mich. App. at 544; 917 N.W.2d at 763; *see also* Answer in Opp'n to Pet., Appx. 1 (ECF No. 7-1, PageID.197) (the felony complaint with notice of Petitioner's status as a fourth habitual offender).   Petitioner also was informed of his status as a fourth-offense habitual offender at the preliminary examination.   *See* 12/1/15 Prelim. Examination Tr. at p. 3 (ECF No. 8-2, PageID.209).

Second, although the initial felony information was not signed, the complaint and an amended criminal information were signed.   *Head*, 323 Mich. App. at 545; 917 N.W.2d at 764; *see also* Answer in Opp'n to Pet., Appx. 1 (ECF No. 7-1, PageID.197).   The amended felony information also contained a notation about the mandatory 25-year sentence.   *Head,* 323 Mich.   App. at 546; 917 N.W.2d at 764*.* And at a pretrial hearing, Petitioner acknowledged that he was subject to a 25-year mandatory minimum sentence because he was a violent habitual offender.   *See* 6/30/16 Pretrial Hr'g Tr. at pp. 4-8 (ECF No. 8-12, PageID.376-80).

Petitioner's rights to notice of the charges and to due process of law were not violated, and his state-law claims are not cognizable on habeas review.   The Court, therefore, declines to grant relief on Petitioner's fourth claim regarding his status as a fourth-offense habitual offender and as a violent habitual offender.

## IV.   CONCLUSION AND ORDER

Petitioner waived review of his claim about the jury instructions, and his other claims either lack merit or are not cognizable on habeas review.   Moreover, the state court's adjudication of most of Petitioner's claims on the merits was objectively reasonable.

For all these reasons, the Court **DENIES** the habeas corpus petition. The Court also **DECLINES** to issue a certificate of appealability because Petitioner has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).   And reasonable jurists could not disagree with the Court's resolution of Petitioner's constitutional claims, nor conclude that the issues deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Nevertheless, because Petitioner was granted permission to proceed in forma pauperis in this Court, *see* ECF No. 3, he may appeal this decision *in forma pauperis* without further authorization from the Court, as an appeal could be taken in good faith.   28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

**SO ORDERED**.


**s/Denise Page Hood**
DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE

DATED: September 28, 2022